## Leisenring v. Nanticoke Borough, Appellant.

*Negligence—Boroughs—Sidewalk—Icy condition of .street.*

In an action against a borough to recover damages for personal injuries by a fall on the ice in a street, there was evidence that ice had been allowed to form in a hollow or depression in the sidewalk where it had been allowed to continue for a long time, and that the plaintiff slipped at this place. The court refused binding instructions for defendant. Defendant presented this point: "If the jury believes that plaintiff's fall was caused by the general slippery condition of the sidewalk there can be no recovery against the defendant in this action." The court answered the point as follows: "Standing as it does there we will have to negative that point." A verdict was found for plaintiff. The court subsequently denied a motion for judgment for defendant non obstante veredicto. On appeal the judges who heard the argument were equally divided in opinion, and the judgment was affirmed.

Argued Feb. 26, 1907. Appeal, No. 45, Jan. T., 1907, by defendant, from judgment of C. P. Luzerne Co., Feb. T., 1904, No. 292, on verdict for plaintiff in case of William H. Leisenring and Phœbe Z. Leisenring v. Nanticoke Borough. Before RICE, P. J., PORTER, HENDERSON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before HALSEY, J.

The court charged in part as follows :

It appears that on December 16, 1902, Phœbe Leisenring, this wife plaintiff, lived in Nanticoke, at No. 15, I think, Main street. She felt it incumbent upon her that morning to go to see a relative at the corner of Arch and Walnut streets, who, it is alleged, was ill. She passed from her house on Main street to Broadway, on the corner of which was Meyers's drug store, passed down Broadway on the left-hand side toward Arch street, some eighty feet or more, where there is a crossing that enters from Broadway into the stables on property that was formerly Gruver's hotel. When she approached this crossing, between half-past eight o'clock in the morning and nine o'clock, she suddenly slipped, she said, her feet going out from under her forward ; she fell backward on the heel of her left hand,

and one of the two bones of the left arm, as a consequence of that fall, was broken. The radius was broken, and the ulna, the other bone of the arm, was sprained or dislocated, it did not appear clearly as you will recollect; it was probably dislocated—the radius was broken and the wrist was dislocated. . . . . It is important for you to determine first just where this lady fell. She alleges in her declaration that in the said borough of Nanticoke there is, and was, at the time complained of, a street called Broadway, extending from Main to Arch street in the said borough, on the westerly side of which said Broadway there was a sidewalk extending from said Main to said Arch street. At the point about midway between Main and Arch streets an alley intersects said Broadway. Nothwithstanding its duty in the premises the said borough of Nanticoke, at the point where said alley intersects said Broadway, defectively constructed, or permitted to be defectively constructed and maintained, the said sidewalk so that a hollow or depression was created therein, and negligently allowed ice to form and remain in said hollow or depression, and that this ice was for a long time, to wit: for several weeks, negligently allowed to gather, and with snow and slush, so that said point appeared to be as safe as the other part of said sidewalk.

The vital, narrow edge of the issue here, so far as a conclusion as to recovery or no recovery is concerned, depends upon your finding as to where this accident occurred. Mrs. Leisenring says in her testimony that at this alley, which was a crossing, as I said before, from Broadway to the stable, made of cobblestones and paving stones, there was a depression, caused by the fact that there had not been exercised due care and caution on the part of this municipality in keeping it in proper repair and condition, which on this day was filled up with snow and ashes and ice ; that on top of this ice she fell ; that it was on this crossing. The O'Brien girl did not see her fall—that is my recollection, but it is not a conclusion for you—but she heard the alarm and she looked around and saw a man—the man was Hopple—who was there to aid her to get up. She testifies she went over and assisted her, and that where she found her was on the alley. The Butscavitch girl immediately followed the O'Brien girl, and she says it was not on the crossing.

This, substantially, particularly as to where the accident occurred, is the testimony on the part of the plaintiffs. There is corroborative testimony, also, on the part of the plaintiffs given by the husband that he heard of the wife's injury, started down to the locality, and saw evidence on the surface that someone had fallen at that point. On the other hand, there is the testimony of the Reilly girl, who was coming up Broadway to Main street, that she had just passed over on the crossing, passed Mrs. Leisenring and had occasion to turn around—she did not say she saw her fall—that she fell between the first and second posts in front of the hotel, the posts, as you will recollect, being the supports to the awning. The witness Hopple says he heard this lady give an outcry for relief and he saw her, and that she fell in front of the hotel. Kulp, the butcher, says he saw her, and that she fell in front of the hotel. Abbott, the hotel man, says he was looking from the window and saw her fall in front of the hotel.

This is the issue for you to determine, first, as to where she fell, and this you must do from the credible testimony in the case. Looking over the witnesses, studying them and their manner upon the witness stand, you must determine where the truth lies as to just where this accident occurred that caused this lady this injury; because, undoubtedly, she was injured. If you find she was injured in front of the hotel and was not injured as alleged in the statement, you need proceed no further with the consideration of the case. If you find she was injured, as she alleges, then you have for further consideration the allegation of negligence on the part of the defendant borough.

It has been held, and it is the law, that it is the duty of a municipal corporation having the exclusive control of its streets to see that they are kept in a condition that is ordinarily safe for the passage of persons and property; and if that plain duty is neglected and thereby injury results to anyone, the corporation is primarily liable to the injured party. A municipality is liable for negligence of its general duty to see that the streets and sidewalks thereof are kept in a reasonably good and safe condition. Another essential as to the applicability of this rule is as to notice. The municipality must have notice of the condition of a street that is alleged to be out of

condition before there can be a recovery against it as a consequence of any injury sustained by reason of negligence of duty. There are two kinds of notice. There is actual notice and there is constructive or implied notice. Actual notice is notice that is given directly to some duly authorized representative of the municipality that a certain street at a certain point is out of repair. Constructive or implied notice is the notice which the borough is presumed to have when a defect in a public highway has existed so long that the borough should reasonably take notice of it and remedy it. If the defect complained of in this case—and you find that such defect was the cause of the injury to this lady—existed so long that in your opinion the borough should have known it, and the plaintiff was free from negligence that contributed to the injury, the plaintiffs might recover compensatory damages and no more. As to the legal duty of a municipality in a case of this kind, it has been held that persons are not necessarily prohibited from using a street of a borough because it is defective or may be partly obstructed. While such conditions may not of themselves prevent the use of a street, they, nevertheless, impose upon the persons using it a higher degree of care than if the street were free from obstructions. In such cases the party traveling the street must use that degree of care demanded by the circumstances of the particular case. When the testimony shows a defect of such character that the street can be used with safety by the exercise of reasonable care, notwithstanding its defective condition, it is for the jury to determine whether the injured party performed the duty required of him under the circumstances. It has been held that one is not precluded from recovery for an injury received from a defect in a road, though knowing it was defective, unless the danger was so apparent that in the use of ordinary care he ought not to have undertaken the passage. A person who uses a street or a highway that is thrown open for public travel, knowing at the time that there is a safer route which he may take to reach his destination, is not necessarily guilty of negligence because he does not take the safer route. It is only when the danger is so great and apparent that an ordinarily prudent person would regard it as dangerous and therefore avoid it, that a trial court can say as matter of law that the

person using the more dangerous route is guilty of contributory negligence. It is not necessary negligence to attempt to pass over even a noticeable accumulation of ice on the pavement. That may depend upon the size and shape of the accumulation, the obviousness and magnitude of the danger, the means .at hand of avoiding it and other circumstances. In the present case the plaintiff had passed over the obstruction the evening before, and whether it was prudent in her to try to do so again is for the jury.

That is what the Supreme Court said in a case from which I have read. Therefore, it is for you, under these rules, as I have given them to you to determine, whether this municipality was negligent in not maintaining in an ordinary and proper condition this street at the point where this lady alleges she was injured.

The defendant presented the following point:

If the jury believes that Mrs. Leisenring's fall was caused by the general slippery condition of the sidewalk, there can be no recovery against the defendant in this case. *Answer :* Standing as it does there we will have to negative that point.

Verdict and judgment for Phœbe A. Leisenring for $1,000, and for William H. Leisenring for $683.44. Defendant appealed.

*Errors assigned* among others were (1) refusal of binding instructions for defendant; (2) refusal of defendant's motion for judgment non obstante veredicto; (3) answer to defendant's fourth point, quoting it.

*Richard B. Sheridan* and *James L. Lenahan,* with them *John T. Lenahan* and *T. D. Garman,* for appellant.

*Edmund G. Butler* and *John M. Garman,* for appellees.

PER CURIAM, April 15, 1907 :

Apart from the questions involved in the first, second and third assignments, a majority of the judges who heard this case are of opinion that no reversible error appears in the record; but as to the question raised by the request for binding instructions and the motion for judgment for defendant non·

obstante veredicto, and as to the question, whether, in view of the instructions given in the general charge, there was reversible error in not unqualifiedly affirming the defendant's fourth point, the judges are equally divided in opinion. Therefore the judgment is affirmed.